FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 JUL 16 PM 1: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEMOND MILLER,                )
    PLAINTIFF,            )
VS.                           )   CV-02-H-1384-S
AUTO WHEELS AND DEALS, LLC,   )
    DEFENDANT.            )

ENTERED

JUL 1 6 2003

MEMORANDUM OF DECISION

The Court has before it the April 14, 2003 motion of defendant Auto Wheels and Deals, LLC ("Auto") for summary judgment. Pursuant to the Court's April 15, 2003 order, the motion was deemed submitted, without oral argument, on May 13, 2003.

I. Procedural History

Plaintiff Demond Miller commenced this action on June 5, 2002 by filing a complaint in this Court alleging fraud, suppression, fraudulent inducement, breach of contract and unjust enrichment in the sale of an automobile. Defendant's April 14, 2003 motion for summary judgment asserts that plaintiff has failed to establish a prima face case for any of plaintiff's claims. Defendant also filed memorandum and evidence[1] in support

---

[1] Defendant submitted the following evidence: excerpts of the deposition of Demond Miller; excerpts of the deposition of Allen J. Law; bill of sale; copy of plaintiff's driver's license;

of its motion on April 14, 2003. Plaintiff filed a brief and evidence[2] in opposition to the motion on May 13, 2003.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories,

---

impounded vehicle inventory report; copy of pleadings; certificate of title of subject vehicle.

[2] Plaintiff submitted the following as evidence: affidavit of Demond Miller; excerpts of deposition of Demond Miller; excerpts of deposition of Allen J. Law; excerpts of deposition of Ronnie Underwood; impounded vehicle inventory report; bill of sale; certificate of title for subject vehicle; inmate inventory sheet; defendant's response to request for admissions. On June 23, 2003, Plaintiff submitted the affidavit of Sergeant Donald Gator as supplemental evidence.

and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to _affirmatively_ show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. _Fitzpatrick_, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff Demond Miller, who currently resides in Mississippi[3], visited Auto Wheels and Deals, LLC in Birmingham, Alabama to view a rebuilt 1999 GMC Denali. (See Pl.'s Depo. at 7, 10.) Allen Law, a salesman at Auto, informed plaintiff that the Denali was under repair and instead showed plaintiff a 2000 Chevrolet Tahoe. (See id at 12.) Plaintiff was told that the Tahoe was not completely finished and still needed an air-conditioning line.[4] (See id at 11.) Law also told plaintiff that Auto had replaced only the "top" of the vehicle using GMC parts and this replacement designated the vehicle as "rebuilt".[5] (See

---

[3] Plaintiff was a resident of Tennessee at the time of the operative facts in this case. The vehicle bill of sale reflects his residence as Tennessee. (See Bill of Sale, Def. Evid. Sub. Ex.3.)

[4] Plaintiff did not inspect the vehicle to look at the VIN number and did not notice any alteration of the VIN number. (See Pl.'s Depo. at 75.)

[5] The defendant disputes this point. Allen Law claims that he walked plaintiff around the vehicle and told him that the car had been in a rollover accident, and therefore they replaced the top and the doors to the vehicle. (See Law Depo. at 28.) Law

5

id at 21.) Plaintiff purchased the Tahoe[6] from Auto for $21,000 on October 15, 2001. (See Bill of Sale, Def. Evid. Sub. Ex. 3.) A new Tahoe would have cost $27,000. (See Pl.'s Depo. at 21-22.)

After purchasing the vehicle, plaintiff drove to Montgomery, Alabama along with Law for a vehicle inspection by the Alabama Department of Motor Vehicles.[7] (See Pl.'s Depo. at 33-34.) The state inspector did not raise any concerns about the different VIN numbers[8] present on the vehicle. (See Law Depo. at 54.) Plaintiff ultimately received an Alabama title document for a "rebuilt" vehicle. (See Title, Def. Evid. Sub. Ex. 7.)

Plaintiff subsequently drove the vehicle to Jackson,

---

stated that he told plaintiff that doors on the vehicle had different vehicle identification ("VIN") numbers than other parts of the car since the doors came from a different vehicle. (See id.) Law also testified in his deposition that he did not know Mississippi's law regarding altered VIN numbers. (See Law Depo. at 49.)

[6] The Tahoe's VIN number as listed on the bill of sale was 1GNEC13T9YJ172775. The bill of sale also lists plaintiff's residence as Tennessee. (See Bill of Sale, Def. Evid. Sub. Ex. 3.)

[7] According to Allen Law, the Alabama Department of Motor Vehicles sends the registration papers for each vehicle to the dealership allowing the dealership to sell the rebuilt vehicle without title; thereafter, the new owner is required to have the vehicle inspected and the state will send a rebuilt title to the dealership to deliver to the owner. (See Law Depo. at 59.) The Department of Revenue inspects each vehicle that has been "rebuilt" and makes a notation of the rebuilt status on the title. (See id at 54.)

[8] There is no dispute that there are two sets of VIN numbers on the vehicle. One VIN number is on the dashboard and an entirely different VIN number is on the driver's side door.

Mississippi, without a license plate[9], and went to a hotel with a friend. (See Pl.'s Depo. at 13-14; 49.)  Plaintiff's friend, Paterra McGee, asked to borrow the vehicle at 2 a.m. and drive two doors down to another room to meet some friends. (See id at 14.) Shortly thereafter, police officers came to plaintiff's room and plaintiff accompanied the officers to his vehicle and was shown that only half a VIN number appeared on his windshield. (See id at 14-15.) Plaintiff stated that the VIN number was located on the driver's side dashboard and "it could be scratched off or it could be covered up, but you can only see half a VIN number." (See Pl.'s Depo. at 20.)  Plaintiff was uncertain as to whether the windshield or some other part of the dash was simply obstructing the view of the complete VIN number. (See id.)

Plaintiff and McGhee were arrested for possession of a vehicle with an altered VIN number.[10] (See id at 14.) Sergeant Gator, the investigating officer, phoned Allen Law to verify the different VIN numbers[11] and Law informed him the alteration was a

---

[9] Plaintiff's vehicle lacked both a license plate and registration papers when he drove to Mississippi. (See Impounded Vehicle Inventory Report, Def. Evid. Sub. Ex. 5; see also Pl.'s Depo. at 49.)

[10] In his complaint, plaintiff alleges that he was pulled over during a routine traffic stop. (See Compl.¶8.) There is no evidence in the record to verify this statement.

[11] There is some confusion over the reason the plaintiff was arrested.  Plaintiff has consistently testified that he was arrested because the VIN was altered whereas Allen Law was contacted to verify the different VIN numbers. (See Pl.'s Depo.

7

result of using different parts to piece together the vehicle. (See Law Depo. at 68.) Subsequently, the charges were dropped against both men, and the vehicle was returned to plaintiff. (See Pl.'s Depo. at 48). However, Sergeant Gator informed plaintiff that possession of the vehicle could possibly subject plaintiff to continued investigation and/or arrest in Mississippi since the VIN numbers were altered and did not match on other parts of the vehicle. (See Gator Affidavit, Pl.'s Suppl. Evid. Sub.; see Pl.'s Affidavit, Pl.'s Evidentiary Sub., Ex. 1.)

    Plaintiff filed suit against Auto alleging fraud because he was sold a car with different doors when he was only told about a change to the top of the vehicle. (See Pl.'s Depo. at 31-32.) While plaintiff does have an Alabama Title document for his rebuilt vehicle, plaintiff claims that his vehicle is worthless to him since he cannot get title to a car with altered VIN number in Mississippi. (See Compl. ¶14.)  It is undisputed, however, that plaintiff has not attempted to get his vehicle registered or a title for his vehicle in the state of Mississippi other than a telephone call to find out "what a title would cost." (See Pl.'s Depo. at 48.)

### IV. Applicable Substantive Law and Analysis

    Plaintiff's complaint contains the following claims:

---

at 13-15; Law depo. at 68.) Plaintiff's complaint states that he was arrested for altered VIN and the police subsequently discovered the different VIN numbers. (See Compl. ¶9.)

(1) fraud, (2) suppression, (3) fraudulent inducement, (4) breach of contract and (5) unjust enrichment. (See Compl.)  Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima facie case for any of plaintiff's claims against defendant.

### A. Breach of Contract

Plaintiff alleges that he entered into a contract to purchase a rebuilt 2000 Tahoe, with a replaced top and a VIN number of 1GNEC13T9YJ172775. (See Compl. ¶28.) Instead, plaintiff claims he received a vehicle with more substantial changes and a different VIN number. (See id.)

Under Alabama law, to show a contract was breached, plaintiff must show: (1) the existence of a valid contract; (2) plaintiff's performance under the contract; (3) defendant's breach, or failure to perform under the contract; and (4) damage sustained as a result of defendant's nonperformance.  See Southern Med. Health Systems Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995). Defendant argues that plaintiff contracted to purchase a rebuilt vehicle and purchased the vehicle according to the contract. (See Def. Mem. at 16.)  Defendant also argues that plaintiff has failed to show any specific damages suffered from an alleged breach. (See id.)

The court agrees with defendant that plaintiff has failed to demonstrate that he sustained any damage as a result of the

alleged breach. Plaintiff has not yet attempted to receive title[12] to his vehicle in Mississippi and therefore has no evidence of a decrease in value other than the statement of Sergeant Gator that the car is <u>possibly</u> incapable of legal use in Mississippi. (<u>See</u> Gator Aff., Pl.'s Supp. Evid. Sub.)(emphasis added).  Thus, absent any attempt to receive title, plaintiff must come forward with some evidence that a rebuilt vehicle, which includes replaced doors in addition to other rebuilt areas, is intrinsically decreased in value by such replacement. Plaintiff has submitted no evidence, no appraisals, no affidavits, no testimony that would show any specific damages from the alleged breach of contract. Plaintiff's failure to attempt to gain title in Mississippi cannot be reiterated enough. Plaintiff's entire claim is based around a reduction in value by reason of an <u>assumed</u> inability to acquire a Mississippi title.

---

[12] The court finds plaintiff's reliance on <u>Buchanan v. Collier</u>, 555 So.2d 134 (Ala. 1989), for the proposition that plaintiff need not have received title in Mississippi to be damaged, as misplaced. In <u>Buchanan</u>, the defendant argued that the state was ready to give plaintiff a rebuilt title and therefore plaintiff could not recover damages based on the inability to receive a title. However, in <u>Buchanan</u>, the title offered by the state would still have been revocable by the state, since plaintiff in Buchanan could not sign a statement verifying the model year of the Corvette as 1980 when plaintiff knew the year was false. In our case, plaintiff is well aware of the different VIN numbers and could thus disclose this fact to the Mississippi Department of Motor Vehicles without making a false statement and possibly receive title. In <u>Buchanan</u>, there was no possibility of receiving a title since title was freely revocable. In our case, plaintiff <u>may</u> have an opportunity to receive title but has failed to seek one.

10

Without any attempt to acquire this title, plaintiff has failed to demonstrate that title could not be acquired.[13] Plaintiff has otherwise failed to present evidence to show damages resulting from an alleged breach. Defendant is entitled to summary judgement in its favor with regard to plaintiff's breach of contract claim.

### B. Fraud, Fraudulent Suppression and Fraudulent Inducement

Plaintiff claims that defendant fraudulently misrepresented the repairs made to the vehicle prior to the sale. (See id.; see also Pl.'s Depo. at 21.) Specifically, plaintiff asserts that Allen Law only told him the vehicle had a new top and never informed plaintiff of the altered VIN number or the replacement of the doors with different VIN numbers on these doors. (See id.) On his fraudulent suppression claim, plaintiff claims that defendant fraudulently suppressed the repairs made to the vehicle doors prior to the sale. (See Pl.'s Depo. at 21.) Finally, on his fraudulent inducement claim, plaintiff alleges that defendant fraudulently induced him into purchasing the vehicle by withholding material information as to the condition of the vehicle. (See Compl. ¶22-26.)

To establish fraud under Alabama law, plaintiff must show:

---

[13] Plaintiff's statement that Sergeant Gator told him he would not be able to acquire a Mississippi Title cannot be considered as evidence. See Fed. R. Civ. Pro. 56(e) and FRE 801.

11

(1) a misrepresentation; (2) of a material existing fact; (3) on which the plaintiff relied; and (4) which proximately caused injury or damage to the plaintiff. See Goodyear Tire and Rubber Co. v. Washington, 719 So.2d 774, 776 (Ala. 1998). To sustain a fraudulent suppression claim under Alabama law, plaintiff must show: (1) defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) the concealment or failure to disclose those facts induced the plaintiff to act or refrain from acting and; (4) the plaintiff suffered actual damage as a proximate result. See Keck v. Dryvit Systems, Inc., 830 So.2d 1, 11 (Ala. 2002). Finally, to sustain a fraudulent inducement claim in Alabama, plaintiff must show: (1) defendant had a duty to speak the truth; (2) defendant made a false representation of material fact; (3) plaintiff justifiably relied upon false representation and; (4) as a proximate result plaintiff was injured or suffered loss. See McGriff v. Minnesota Mutual Life Insurance Company, 127 F.3d 1410, 1414 (11th Cir. 1997).

Defendant argues that it did not make any misrepresentation since plaintiff was purchasing a rebuilt vehicle and should have expected a vehicle that was in essence, rebuilt, with a variety of parts. (See Def. Mem. at 8.) Defendant also argues that different VIN numbers and different doors are not material facts, and regardless of the claimed misrepresentation or suppression,

would not have affected plaintiff's decision to purchase the vehicle. (See id.)  Finally, defendant argues that plaintiff has come forward with no evidence of damage as a proximate result of any claimed misconduct, specifically noting that plaintiff's allegation that his vehicle is worthless is not supported by the evidence. (See id at 8-10.)  Defendant correctly relies on the undisputed fact that plaintiff has not attempted to get title to the vehicle in Mississippi and, therefore, does not know whether Mississippi title can be acquired.(See id at 11.)

    The court is aware that the summary judgement standard requires all reasonable doubt about the facts and all justifiable inferences to be resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. In this case, each of plaintiff's fraud based claims, i.e. fraud, suppression and inducement, require plaintiff to prove (1) materiality, (2) reliance on defendant's alleged fraudulent statement and (3) a showing that defendant's fraudulent statement was the proximate cause of plaintiff's alleged damages.

    As noted earlier while discussing plaintiff's breach of contract claim, plaintiff has failed to demonstrate that he

sustained damage as a result of the alleged breach of contract. That discussion equally applies to plaintiff's fraud claim. Plaintiff has failed to demonstrate that he sustained any damage as a result of the alleged fraudulent conduct, and defendant is entitled to summary judgement in its favor with regard to those claims.

Separately, and alternatively, defendant is entitled to summary judgement on plaintiff's fraud claim because he has failed to come forward with any evidence demonstrating the materiality of and reliance on the alleged fraudulent misrepresentations or statements. Plaintiff and Allen Law both testified that neither one of them knew any of the rules and regulations regarding Mississippi title, specifically, the regulation forbidding a vehicle with multiple VIN numbers and an altered VIN number. (See Pl.'s Depo. at 50; see also Law Depo. at 49.) In fact, when plaintiff purchased the vehicle, he did not inspect the VIN number or even notice if it was "altered." (See Pl.'s Depo. at 75.) Thus, at the time plaintiff purchased his vehicle, since neither party was aware of Mississippi title regulations, the altered/multiple VIN numbers were obviously not material to plaintiff's purchase decision since the possible significance of altered numbers did not become material until after plaintiff was arrested. In fact, plaintiff was accompanied by Law to Montgomery and upon inspection by a State of Alabama

inspector, was given an Alabama rebuilt title that was valid despite the altered/multiple VIN numbers.[14]  Without any knowledge of these alleged title restrictions, there is simply no evidence produced by plaintiff that illustrates the materiality of the changed doors at the time of sale.

Plaintiff has produced no evidence that illustrates had he known of different doors and an altered VIN number at the time of purchase, without considering his subsequent arrest or title problems, he would have changed his decision to purchase the vehicle, or at least called the Mississippi DMV for assurance of title.  Without any knowledge of these title restrictions, there is no evidence that illustrates reliance by plaintiff on defendant's alleged fraudulent misrepresentations.  For plaintiff to prevail on his fraud claim, plaintiff must prove that had Law informed him of the different doors and altered VIN number, plaintiff would not have purchased the vehicle.  See Shades Ridge Holding Company v. Cobbs, Allen & Hall Mortgage Comp., 390 So.2d 601 (Ala.1980).  Plaintiff has produced no evidence that would illustrate reliance on the alleged fraudulent misrepresentation, much less evidence that would illustrate plaintiff would not have purchased the vehicle had he known of the altered/different VIN

---

[14] Interestingly, at the time of plaintiff's arrest, plaintiff did not have either his rebuilt title or a license plate for his vehicle. (See Impounded Vehicle Inventory Report, Def. Evid. Sub. Ex. 5).

15

numbers.

This reasoning applies equally well to the proximate cause element of plaintiff's fraud-based claims. In this case, plaintiff must produce some evidence that <u>but</u> <u>for</u> Law's fraudulent statement that <u>only</u> the top had been changed, and not the doors, plaintiff would not have purchased the vehicle. <u>See</u> <u>Shades</u>, 390 So.2d at 607("in cases of fraud proximate cause is often articulated as a requirement of reasonable reliance where but for the misrepresentation or concealment it is likely the plaintiff would not have acted in the transaction in question.") For plaintiff to sustain his inducement claim and the proximate cause elements of fraud and fraudulent suppression, he must show that without the benefit of hindsight, he would not have purchased the vehicle had Law informed him of the changed doors. <u>See</u> <u>Booker v. United American Insurance Company</u>, 700 So.2d 1333 (Ala. 1997)(holding to be actionable the suppression of a material fact must induce action on the part of the complaining party); <u>see</u> <u>also</u> <u>Crigler v. Salac</u>, 438 So.2d 1375 (Ala. 1983)(same). Plaintiff has not come forward with even a scintilla of evidence that shows he would have acted differently.

Defendant is entitled to summary judgement in its favor on all the fraud-based claims for each of the separate and alternative reasons discussed herein.

### C. Unjust Enrichment

Plaintiff simply alleges that defendant has been unjustly enriched at the expense and detriment of plaintiff. Although plaintiff voluntarily paid defendant $21,000 to secure a vehicle, that amount can be recovered if plaintiff can establish defendant received that amount as a result of fraud, duress or extortion. See Stone v. Mellon Mortgage Company, 771 So.2d 451 (Ala. 2000)(holding defense of voluntary payment only precludes unjust enrichment claim in the absence of fraud). As such, and as noted in the analysis above, plaintiff cannot prevail on his fraud claims. Therefore, without a showing of fraud, plaintiff can no longer sustain a viable unjust enrichment claim since he voluntarily paid defendant and received a vehicle in return for payment. See Stone at 456. Defendant is entitled to summary judgement in its favor on plaintiff's unjust enrichment claim.

In summary, the Court finds that no material issues of fact remain and that defendant's motion for summary judgment is due to be granted in all respects. A separate order to that effect will be entered.

DONE this 16th day of July, 2003.

_____
SENIOR UNITED STATES DISTRICT JUDGE